UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
———————————————————————

ROBERT MEIN,

        Plaintiff,

    v.

SMITH FAMILY FARMS, LLC, SMITH
FAMILY ACRES, LLC, STEPHEN
SMITH, AND STEPHEN BRITT,

        Defendants.
———————————————————————

**DECISION & ORDER**

6:20-CV-06306 EAW

## <u>INTRODUCTION</u>

Plaintiff Robert Mein ("Plaintiff") commenced this action on May 11, 2020, against defendants Smith Family Farms, LLC, Smith Family Acres, LLC, Stephen Smith, and Stephen Britt ("Defendants"), pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the New York Labor Law, N.Y. Labor Law §§ 190, *et seq.*, N.Y. Labor Law §§ 650, *et seq.* ("NYLL"), and the New York Real Property Law ("NYRPL"), § 235-b. (Dkt. 1). On May 12, 2020, Plaintiff filed an Amended Complaint. (Dkt. 4). Plaintiff worked as a manual laborer at Defendants' cattle and produce farm from October 2019 until February 21, 2020. (*Id.* at ¶¶ 1, 40, 44). He alleges three causes of action: (1) minimum wage violations under the FLSA; (2) minimum wage, overtime, and notice violations under the NYLL; and (3) as against defendants Smith Family Farms and Smith Family Acres, failure to provide him with premises fit for human habitation, in violation of NYRPL § 235-b. (*Id.* at 10-12).

- 1 -

On August 10, 2020, the parties filed a Motion for Settlement Approval, attaching the proposed settlement agreement as an exhibit to their motion (hereinafter, the "Agreement"). (Dkt. 10 & Dkt. 10-1). On August 24, 2020, the Court held a telephonic hearing on the parties' motion. (Dkt. 13). The Court reserved decision on the motion and directed the parties to submit a revised Agreement, amending the release provision to make it mutual. (*Id.*). The Court also instructed Plaintiff's counsel to file an affidavit, further detailing the fees and costs expended during his representation of Plaintiff. (*Id.*). On August 28, 2020, the parties filed a renewed request to approve the Agreement (Dkt. 14), to which they attached the revised Agreement and the fee declaration from Plaintiff's counsel (Dkt. 14-1 & Dkt. 14-2). The revised Agreement has not yet been signed by the parties or their attorneys.

Pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), either the district court or the United States Department of Labor must approve the settlement of an employee's FLSA claims against their employer, where the settlement would dispose of those claims with prejudice. *Id.* at 206. The parties request that the Court approve the proposed Agreement. (Dkt. 14). For the following reasons, the parties' motion is granted.

## DISCUSSION

## I.   Legal Principles

"Parties cannot privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor." *Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259 (RA), 2015 WL 9162701, at *1 (S.D.N.Y. Dec. 15, 2015) (citing *Cheeks*,

796 F.3d at 206 ("Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with

prejudice require the approval of the district court or the [Department of Labor] to take

effect.")).  "To approve a settlement, this Court must be satisfied that the agreement is 'fair

and reasonable.'"  *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015).

> In determining whether the proposed settlement is fair and reasonable, a
> court should consider the totality of circumstances, including but not limited
> to the following factors: (1) the plaintiff's range of possible recovery; (2) the
> extent to which "the settlement will enable the parties to avoid anticipated
> burdens and expenses in establishing their respective claims and defenses";
> (3) the seriousness of the litigation risks faced by the parties; (4) whether "the
> settlement agreement is the product of arm's-length bargaining between
> experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).  Other factors may

weigh against settlement approval, such as:

> (1) "the presence of other employees situated similarly to the claimant"; (2)
> "a likelihood that the claimant's circumstance will recur"; (3) "a history of
> FLSA noncompliance by the same employer or others in the same industry
> or geographic region"; and (4) the desirability of "a mature record" and "a
> pointed determination of the governing factual or legal issue to further the
> development of the law either in general or in an industry or in a workplace."

*Felix v. Breakroom Burgers & Tacos*, No. 15 CIV. 3531 (PAE), 2016 WL 3791149, at *2

(S.D.N.Y. Mar. 8, 2016) (citations omitted).

### A.    <u>Factors Weighing in Favor of Approval</u>

Regarding the first *Cheeks* factor, the Court finds that the amount of recovery under

the Agreement is fair when compared to Plaintiff's expected range of recovery.  At the

motion hearing, Plaintiff's counsel represented that Plaintiff's highest-expected recovery

is $36,000, not accounting for attorney's fees or pre-judgment interest.  The settlement

agreement provides for a settlement amount of $15,000, which the parties state "falls in between Plaintiff's and Defendants' opening damage computations, with each party maintaining that possible recovery would be significantly greater or less than the settlement amount if a compromise was not reached." (*See* Dkt. 10 at 2 & Dkt. 14-1 at 3). Accordingly, this amount represents a fair compromise in resolving this litigation. Further, excluding the $1,500 award for attorney's fees, the settlement sum of $13,500 represents a substantial portion of the damages allegedly owed to Plaintiff. Therefore, the Court finds Plaintiff's monetary compensation under the Agreement to be reasonable, given his possible range of recovery.

Both parties also indicate that they entered the Agreement, at least in part, to avoid litigation risks and additional costs associated with proceeding with motion practice or a trial. (*See* Dkt. 10 at 2 (explaining that the settlement agreement "will enable the parties to avoid the anticipated burdens of continuing with protracted litigation," and will allow for the prompt payment of wages and damages, as well as the complete and final resolution of Plaintiff's claims, which are preferable to continued litigation)). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quotation marks omitted). Here, "the [A]greement was reached early in the proceedings, reflecting the legitimate concerns of both sides to avoid time-consuming and potentially expensive litigation burdens. . . ." *Goett v. VI Jets Int'l, Inc.*, No. 14-CV-8256 (MHD), 2015 WL 3616961, at *2 (S.D.N.Y. Apr. 22, 2015); *see also Zamora v. One Fifty Seven Corp.*, No.

14 Civ. 8043 (AT), 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016) ("Beyond establishing claims and defenses at trial, proceeding with litigation would require further discovery and motion practice.").

Furthermore, competent counsel on both sides facilitated the Agreement, and there is no indicia of fraud or collusion. "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) (noting that "[d]uring the entire process, [the p]laintiffs and [the d]efendant were represented by counsel experienced in wage and hour law."); *Santos v. Yellowstone Props., Inc.*, No. 15 Civ. 3986 (PAE), 2016 WL 2757427, at *3 (S.D.N.Y. May 10, 2016) ("As to the fourth and fifth factors, there are no signs of fraud or collusion, and the settlement here was the product of arms'-length bargaining by experienced counsel."). Therefore, the Court concludes that the factors favoring the approval of a settlement agreement are present in the instant matter.

### B.   None of the Factors Weighing Against Approval Are Applicable

None of the factors weighing against settlement approval are present here. There is no evidence that other employees are similarly situated to Plaintiff's circumstances.[1] *See Browder v. Advertisement Carriers Enters., Inc.*, No. 15 Civ. 5594 (PAE), 2016 WL 7031608, at *4 (S.D.N.Y. Nov. 30, 2016) ("The fact that no other employee has come

---

[1]   The Amended Complaint alleges that Defendants "require employees to work long and arduous hours," and references one of Plaintiff's co-workers, named Cliff. (*See* Dkt. 4 at ¶¶ 37, 55). However, the Amended Complaint does not allege that any other employees, or Cliff, were similarly situated to Plaintiff as to work schedule and compensation, nor is Cliff or any other employee named as a plaintiff in this action.

forward with a claim supports settlement approval." (citing *Santos*, 2016 WL 2757427, at *3)). "Second, because [Plaintiff] no longer work[s] for [D]efendant[], the Court has little concern that [D]efendant[] used improper leverage to secure the settlement." *Santos*, 2016 WL 2757427, at *3 (citing *Cisneros v. Schnipper Rest. LLC*, No. 13 Civ. 6266 (JMF), 2014 WL 67235, at *1 (S.D.N.Y. Jan. 8, 2014)). The Court is also unaware of any "history of FLSA noncompliance" by Defendants, and the Amended Complaint "does not appear to raise novel factual or legal issues that would further the development of law in this area." *Id.*

### C.    Additional Considerations in Favor of Approval

"[I]n *Cheeks*, the Second Circuit provided guidance as to the types of provisions that contravene the FLSA's remedial purpose of 'prevent[ing] abuses by unscrupulous employers, and remedy[ing] the disparate bargaining power between employers and employees.'" *Yang v. Matsuya Quality Japanese Inc.*, No. 15-CV-1949(JS)(ARL), 2017 WL 456464, at *1 (E.D.N.Y. Feb. 2, 2017) (quoting *Cheeks*, 796 F.3d at 207). The Second Circuit specifically disapproved of settlement agreements containing:

> (1) a battery of highly restrictive confidentiality provisions . . . in strong tension with the remedial purposes of the FLSA; (2) an overbroad release that would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues; and (3) a provision that would set the fee for plaintiff's attorney . . . without adequate documentation to support such a fee award.

*Cheeks*, 796 F.3d at 206 (quotation marks omitted). "Courts in this Circuit also commonly decline to approve settlements containing . . . overbroad non-disparagement

provisions. . . ." *Escobar v. Fresno Gourmet Deli Corp.*, No. 16 Civ. 6816 (PAE), 2016 WL 7048714, at *2 (S.D.N.Y. Dec. 2, 2016).   The Agreement does not contain a confidentiality provision or a non-disparagement clause.

However, the original Agreement submitted by the parties contained a one-sided release, which provided, in relevant part:

> a. Plaintiff fully and forever releases, relieves, waives, relinquishes and discharges from all actions, causes of action, suits, debts, dues, liabilities, obligations, costs, expenses, sums of money, controversies, accounts, reckonings, liens, bonds, bills, specialties, covenants, contracts, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands, which he had, now has or may have had against Defendants arising out of, by reason of, or relating in any way whatsoever to the allegations contained in the Complaint from the beginning of the world to the date on which they execute this Agreement and Release, including: (i) those relating to wages/compensation allegedly owed and (ii) claims arising under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") before or at the time of the signing of this Agreement and Release.
>
> b. Excluded from this waiver and release is any claim or right that cannot be waived by law, including (i) workers' compensation and unemployment insurance claims, and (ii) all claims arising after the date of this Agreement.

(Dkt. 10-1 at ¶ 5a & b).

"Some courts scrutinizing FLSA settlement have refused to approve settlements with broad releases of claims, concluding that they conflict with the FLSA's remedial purposes." *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-CV-5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016).   "In this Circuit, courts routinely reject broad releases in FLSA cases of 'unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'"   *Felix*, 2016 WL 3791149, at *3 (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)).   Judicial disfavor of

broad releases is especially pronounced where "the releases were not mutual and protected only the defendants in the action." *Lola*, 2016 WL 922223, at \*2; *see also Souza v. 65 St. Marks Bistro*, No. 15-CV-327 (JLC), 2015 WL 7271747, at \*5 (S.D.N.Y. Nov. 6, 2015) ("[T]he Court is willing to approve the release terms of the settlement in this case, with the modification that the release be *mutual* in all respects.  A mutual release will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes.  It is just as necessary for employees to obtain a release from the employer in these circumstances, otherwise they could still face the threat of litigation.  This result is consistent with the goals of a fair and just settlement.").

In response to the Court's concern about the release provision being one-sided, on August 28, 2020, the parties submitted the revised Agreement, which added the following provision to the release:

> Defendants fully and forever release, relieve, waive, relinquish and discharge from all actions, causes of action, suits, debts, dues, liabilities, obligations, costs, expenses, sums of money, controversies, accounts, reckonings, liens, bonds, bills, specialties, covenants, contracts, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands, which they had, now have or may have had against Plaintiff arising out of, by reason of, or relating in any way whatsoever to the allegations contained in the Complaint from the beginning of the world to the date on which they execute this Agreement and Release.

(Dkt. 14-1 at ¶ 5b).  The addition of this provision, under which Defendants also release Plaintiff from potential claims, renders the release provision mutual.

The release provision requires the parties to release those claims "arising out of, by reason of, or relating in any way whatsoever to the allegations contained in the Complaint,"

including claims relating to wages/compensation allegedly owed and claims arising under the FLSA and NYLL.  (Dkt. 14-1 at ¶ 5a & b).  *See Ezpino v. CDL Underground Specialists, Inc.*, No. 14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017) (approving of revised release language, which was "limited to causes of action 'related to claims for unpaid wages and overtime arising under the [FLSA], 29 U.S.C. § 216(b) [and] claims for unpaid wages and overtime arising under the [NYLL], Article 19 and 12 N.Y.C.R.R. Part 142. . . .'"), *adopted*, 2017 WL 3037406 (E.D.N.Y. July 17, 2017); *cf. Batres v. Valente Landscaping Inc.*, No. 14-CV-1434 (SIL), 2016 WL 4991595, at *3 (E.D.N.Y. Sept. 15, 2016) (finding that release provision was overly broad where it required the plaintiffs to "release 'any and all *other employment-related claims* arising up to and including the date [the p]laintiffs sign [the] Agreement'" (emphasis added)).  The instant provision's terms are not as broad as an all-encompassing general release clause.  Further, even if the instant provision included a general release, courts have found that general release provisions may be appropriate under certain conditions.  For example, a "general release . . . with former employees who have no ongoing relationship with the employer[] makes sense in order to bring complete closure."  *Souza*, 2015 WL 7271747, at *5.  The *Souza* court modified the general release provision at issue in that case so it would be "mutual in all respects," because "[a] mutual release will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes."  *Id.*

In the instant matter, Plaintiff no longer works for Defendants (*see* Dkt. 4 at ¶ 44 (Plaintiff was employed by Defendants from October 2019 until February 2020)), and the

release at issue is mutual.  Furthermore, "[b]ecause this case is not a class action, at least one of the dangers posed by an overbroad release – that it would bind class members who had no bargaining power concerning the settlement terms – is not present here."  *Cionca v. Interactive Realty, LLC*, No. 15-CV-05123 (BCM), 2016 WL 3440554, at *4 (S.D.N.Y. June 10, 2016).  Accordingly, the Court finds that the mutual waiver and release provisions are fair and reasonable.

## II.    <u>The Requested Attorney's Fees Award is Reasonable</u>

The Agreement provides that attorney's fees and costs in the amount of $1,500 be paid to the Worker Justice Center of New York ("WJCNY").  (*See* Dkt. 14-1 at ¶ 2(a)(ii)). Plaintiff contends that "[o]f the total settlement amount of $15,000, $1,500 will be paid to Plaintiff's counsel . . . to reimburse costs (principally the filing process server's fees) and cover a portion of WJCNY's fees."  (Dkt. 10 at 3).

"When a[] FLSA settlement includes an allotment of attorney's fees, the court must also evaluate the reasonableness of the fees.  This ensures that the agreement is not influenced by conflicts between the interests of counsel and the plaintiff's interest in obtaining the best possible recovery."  *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13-CV-6126 (NGG) (VMS), 2014 WL 6621081, at *2 (E.D.N.Y. Nov. 21, 2014) (citations omitted).  The Second Circuit has set forth six factors to evaluate the reasonableness of attorney's fees in the FLSA settlement context: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d

Cir. 2000) (quotation marks and citation omitted).  "In addition, a plaintiff seeking attorneys' fees must submit evidence providing a factual basis for the reward, or else the fee application will be rejected or reduced." *Hernandez v. Tabak*, No. 12 Civ. 1402 (PKC), 2013 WL 1562803, at *1 (S.D.N.Y. Apr. 10, 2013).  "A court determining the portion of a FLSA settlement reasonably allocated to attorneys' fees may use either a 'lodestar' method or a 'percentage of the fund.'" *Flores v. Negril Vill., Inc.*, No. 15-CV-2658 (AJN), 2016 WL 8969316, at *1 (S.D.N.Y. Apr. 25, 2016) (citing *Thornhill v. CVS Pharmacy, Inc.*, No. 13 Civ. 5507 (JMF), 2014 WL 1100135, at *2 (S.D.N.Y. Mar. 20, 2014)).  "In this Circuit, courts typically approve attorney's fees that range between 30 and 33[percent]." *Thornhill*, 2014 WL 1100135, at *3.

Plaintiff's counsel is employed by the WJCNY, a non-profit, public interest law firm. (Dkt. 10 at 3).  In the parties' original submission in support of the motion, counsel stated that the $1,500 award would be used to reimburse costs and cover a portion of WJCNY's fees, and that counsel worked on the case for over 40 hours. (*Id.*).  At the motion hearing, the Court directed Plaintiff's counsel to submit an affidavit further specifying the work performed and time spent on the case.  On August 28, 2020, Plaintiff's counsel Robert McCreanor, Esq. submitted a declaration, providing additional information relating to his costs, fees, and work performed.  (*See* Dkt. 14-2).  Before leaving WJCNY, Mr. McCreanor's co-counsel, John Marsella, Esq., performed 20.42 hours of work on this case, including initial client intake, fact gathering, legal research, complaint drafting, traveling to and meeting with Plaintiff to review the complaint, filing the complaint, communications with opposing counsel, and discussions with Plaintiff regarding settlement. (*Id.* at ¶ 4).

Mr. McCreanor performed approximately 20 hours of work on the case, including reviewing drafts of pleadings and damages calculations, legal research, settlement discussions with Plaintiff, negotiations with opposing counsel, drafting the settlement agreement and motion for approval thereof, and a conference with the Court.  (*Id*. at ¶ 6).  Using an hourly rate of $200 per hour for Mr. Marsella and an hourly rate of $300 for Mr. McCreanor (*id*. at ¶¶ 5, 7), Plaintiff's fees to date total at least $9,947.71 (*id*. at ¶ 8).  The WJCNY has expended $643.10 to cover costs in this case, including the filing fee and the process server's fee, and excluding other miscellaneous items.  (*Id*. at ¶ 9).  Despite the amount of these fees and costs, the settlement agreement provides for only $1,500 in attorney's fees and costs.

The award of $1,500 for approximately 40 hours worked, less $643.10 in costs, yields an hourly rate of approximately $21.40 per hour in attorney's fees, which is more than reasonable and is well below the hourly rates previously approved by courts in this district.  *See Snead v. Interim Healthcare of Rochester, Inc.*, 286 F. Supp. 3d 546, 558 (W.D.N.Y. 2018) (finding $200 per hour a reasonable fee); *Mendez v. Radec Corp.*, 907 F. Supp. 2d 353, 357 (W.D.N.Y. 2012) (finding $200 per hour as a reasonable average hourly rate in FLSA litigation); *Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 413 (W.D.N.Y. 2011) (finding $195 per hour for an associate was reasonable in FLSA litigation).  Further, the $1,500 award for fees and costs represents only 10 percent of the $15,000 settlement amount, which is well below the 30 to 33 percent typically approved for attorney's fees.

The Court has also considered the *Goldberger* factors in concluding that the agreed upon fee award is reasonable.  Based on the declaration submitted by Plaintiff's counsel, it

does not appear that there was any unnecessary duplication of work on Plaintiff's case. Although the magnitude and complexity of this case is not as complex as the FLSA/NYLL "hybrid" actions frequently addressed by courts in this Circuit, Plaintiff asserted three causes of action, based on both federal and state law. Both Plaintiff and Defendants determined that a fair settlement was a more favorable result than continuing with protracted litigation, and this favorable result was achieved at an early stage of the case, which is a positive reflection of counsel's experience and the quality of the representation. As explained above, the $1,500 payment for fees and costs comprises only 10 percent of the total settlement amount. Furthermore, public policy considerations counsel in favor of the requested fee award because the WJCNY is a non-profit public interest law firm which represents low-income clients, such as Plaintiff. All these factors weigh in favor of finding that the award of $1,500 for attorney's fees and costs is fair and reasonable.

## CONCLUSION

For the foregoing reasons, the Motion for Settlement Approval (Dkt. 10 & Dkt. 14) is granted, and the Agreement is approved, with the condition that the Agreement be signed and fully executed. Within 30 days of the date of this Decision and Order, the parties shall file a stipulation of dismissal, attaching the fully executed Agreement.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

DATED:     September 9, 2020
           Rochester, New York